[No. 24332-6-II.   Division Two.   March 16, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. DWIGHT E. CHANCE, *Appellant*.

*Don A. McConnell* and *Jonathan L. Meyer*, for appellant (appointed counsel for appeal).

*Edward G. Holm, Prosecuting Attorney*, and *Steven C. Sherman, Deputy*, for respondent.

QUINN-BRINTNALL, J. — A jury convicted Dwight Chance of first degree assault, second degree assault, first degree malicious mischief, and stalking after he assaulted an attorney who had successfully prosecuted him several years earlier. He argues that these convictions should be reversed on grounds that (1) the court erred by admitting evidence of the fact and nature of his prior convictions, (2) the evidence was insufficient to support the convictions, and (3) his counsel was ineffective. He also asserts that the court erred by imposing an exceptional sentence on the assault charges and by requiring that he serve his sentence on the stalking charge consecutively. We find that evidence of the fact and nature of his prior convictions was properly admitted and that his counsel was effective. We also hold that retaliation against an official for the performance of his duty is a legitimate nonstatutory aggravating factor sufficient to support an exceptional sentence.

We affirm.

## FACTS

In 1991, William Gilbert[1] prosecuted Chance for residential burglary and assault in the second degree. The victim of the burglary and assault was Chance's wife. Gilbert left the prosecuting attorney's office for private practice in 1993. In late 1994 or early 1995, Chance began harassing Gilbert. Gilbert sought police protection and eventually obtained a no-contact order. Chance harassed and intimidated Gilbert off and on for several years.

On August 3, 1998, out of Gilbert's presence, Chance threatened Gilbert's life at the Thurston County Courthouse. A sheriff's captain learned of the threat and accompanied Gilbert out of the courthouse to his car. Chance was sitting near Gilbert's car, so the captain stayed with Chance while Gilbert left in his car. Chance immediately jumped into his own car and chased after Gilbert. He pursued Gilbert through heavy traffic, sometimes driving on the shoulder of the road. Chance rammed Gilbert's car with his own. A few minutes later, Chance chased Gilbert on foot, eventually tackling[2] him to the ground and grabbing him around the neck. The altercation occurred just outside the courthouse. Bystanders separated the two men.

Gilbert fractured his elbow and injured his ribs, thumb, and hip in the altercation. The cost of repairs to Gilbert's car was approximately $3,260.

On the morning of trial, the court allowed the State to file an amended information. Count I of the amended information charged assault in the first degree (car-ramming incident); Count II, assault in the first degree (courthouse assault); Count III, malicious mischief in the first degree (car damage); and Count IV, stalking. The jury found Chance guilty as charged on Counts II, III and IV, but convicted him of the lesser included offense of assault in the

---

[1] In 1991, Gilbert was a deputy prosecuting attorney at the Thurston County Prosecutor's Office.

[2] Testimony from several witnesses indicated that he tackled Gilbert either as Gilbert was running or as he tried to regain his footing after stumbling.

second degree for the car-ramming incident charged in Count I.

The court sentenced Chance to 18 months for Count III (malicious mischief) and 12 months for Count IV (stalking). The court imposed an exceptional sentence of 120 months for Count I (assault in the second degree) and 360 months for Count II (assault in the first degree). The court cited deliberate cruelty and retaliation as aggravating factors justifying the exceptional sentences and found that either factor was sufficient to justify the exceptional sentences. The court imposed concurrent sentences on Counts I, II and III, but, because Chance had numerous warnings and opportunities to stay away from Gilbert over a long period of time and refused to do so, the trial court ordered Chance to serve the sentence for stalking consecutively to the other three sentences.

## DISCUSSION

### Sentencing Issues

Chance contends that we should vacate his sentence because the trial court erred by imposing an exceptional sentence for each assault and requiring that he serve his 12-month sentence on the stalking conviction after the concurrent sentences on the other three counts.

### A. Exceptional Sentences

■ The trial court may depart from the standard range and impose an exceptional sentence when there are substantial and compelling reasons to do so. RCW 9.94A-.120(2). This court reviews a trial court's imposition of an exceptional sentence using a three-part test:

1. Under the "clearly erroneous" standard, does the evidence in the record support the reasons given?

2. Do the court's reasons justify a departure from the standard range as a matter of law?

3. Did the trial court abuse its discretion by imposing a sentence that is clearly too excessive?

*State v. Garza*, 123 Wn.2d 885, 889, 872 P.2d 1087 (1994); RCW 9.94A.210(4).

The court imposed exceptional sentences on the assaults, Counts I and II, and found that either deliberate cruelty or retaliation would justify the exceptional sentences. The court did not find future dangerousness as the State requested.

■ 1.a. There was sufficient evidence to support the finding of retaliation. At nearly every incident testified to at trial, Chance threatened Gilbert and referred, directly or indirectly, to his previous relationship with Gilbert as a prosecuting attorney. Chance gave no other reason to explain his repeated contacts with Gilbert and none appears in the record. The court did not err in finding that Chance was acting in retaliation for Gilbert's actions in his official capacity as a prosecutor. The finding satisfies the first prong of the *Garza* test.

■■ 1.b. There was not sufficient evidence to support the finding of deliberate cruelty. "Deliberate cruelty" is "gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself." *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989). Courts have found deliberate cruelty under extreme circumstances,[3] and Chance's actions do not reflect the clearly egregious conduct reflected in other cases where courts have found gratuitous violence. We hold that the record does not support a finding of deliberate cruelty sufficient to support the imposition of an exceptional sentence.

---

[3] *See, e.g., State v. Holyoak*, 49 Wn. App. 691, 696, 745 P.2d 515 (1987) (victim repeatedly beaten, struck by chunks of concrete, choked, and had face slammed into concrete); *State v. Altum*, 47 Wn. App. 495, 503, 505, 735 P.2d 1356 (1987) (victim suffered broken nose, chipped tooth, and threats of imminent death, was gang raped and had half her scalp hair pulled out), *overruled on other grounds by State v. Parker*, 132 Wn.2d 182, 190, 937 P.2d 575 (1997); *State v. Dennis*, 45 Wn. App. 893, 896, 728 P.2d 1075 (1986) (victim suffered multiple penetrations and was gang raped).

■ 2. Retaliation justifies a departure from the standard range as a matter of law. To determine whether a factor legally supports departure from a standard sentence range, we employ the two-part test set forth in *State v. Ferguson*:

> [F]irst, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range; and *second*, the asserted aggravating factor must be sufficiently substantial and compelling to distinguish the charged offense from others in the same category.

*Ferguson*, 142 Wn.2d 631, 649, 15 P.3d 1271 (2001) (footnotes omitted).

■ First, retaliation is not a factor that the legislature considered in establishing the standard sentence range for assault, so the trial court may consider it in determining whether to depart from the standard sentence range.

Second, retaliation against an officer of the court is sufficiently substantial and compelling to justify an exceptional sentence. Retaliation is not a statutory aggravating factor under the Sentencing Reform Act of 1981, chapter 9.94A RCW. Where circumstances require additional protection for the public, however, courts have applied other nonstatutory and compelling reasons as justification for imposing an exceptional sentence.[4] In *State v. Riley*, 69 Wn. App. 349, 355, 848 P.2d 1288 (1993), Division One of this court upheld an exceptional sentence based on a finding of retaliation in a gang-related case. The legislature recognizes gang retaliation as a statutory aggravating factor in aggravated murder cases. RCW 10.95.020(6).[5] Likewise, retaliation against a member of the criminal justice system is also a statutory aggravating factor in aggravated murder

---

[4] *See, e.g.*, *State v. Halgren*, 137 Wn.2d 340, 346, 971 P.2d 512 (1999) (future dangerousness).

[5] "The person committed the murder to obtain or maintain his or her membership or to advance his or her position in the hierarchy of an organization, association, or identifiable group." RCW 10.95.020(6).

cases. RCW 10.95.020(8).[6] Because an attack on an official for performing his duties not only threatens the victim but also jeopardizes the functioning of the criminal justice system itself, we hold that retaliation against a prosecutor for his actions conducted in his official capacity is a nonstatutory aggravating factor that is sufficiently compelling to support an exceptional sentence for an assault conviction.

■ 3. The sentence was not clearly excessive. This court has "near plenary discretion" to affirm the length of an exceptional sentence. *State v. Burkins*, 94 Wn. App. 677, 701, 973 P.2d 15, *review denied*, 138 Wn.2d 1014, 989 P.2d 1142 (1999). A sentence is excessive only if its length "shocks the conscience" in light of the record. *Burkins*, 94 Wn. App. at 701 (citing *State v. Vaughn*, 83 Wn. App. 669, 681, 924 P.2d 27 (1996)).

In the presence of aggravating factors, Washington courts have upheld exceptional sentences that were much higher than the top of the standard range. *See, e.g., State v. Smith*, 82 Wn. App. 153, 167, 916 P.2d 960 (1996) (100-year sentence—3.1 times the top of the standard range—neither untenable nor clearly excessive); *State v. Overvold*, 64 Wn. App. 440, 450, 825 P.2d 729 (1992) (72-month sentence when standard range was 15-20 months). Based on Chance's previous criminal history, the standard range sentence for second degree assault (Count I) is 43-57 months, and the court imposed a sentence of 120 months. The standard range sentence for first degree assault (Count II) is 178-236 months, and the court imposed a sentence of 360 months. These sentences do not shock the conscience

---

[6] The victim was:

>(a) A judge; juror or former juror; prospective, current, or former witness in an adjudicative proceeding; prosecuting attorney; *deputy prosecuting attorney*; defense attorney; a member of the indeterminate sentence review board; or a probation or parole officer; and

>(b) The murder was related to the exercise of official duties performed or to be performed by the victim[.]

RCW 10.95.020(8) (emphasis added).

and are not excessive. The sentences satisfy the third prong of the *Garza* test.

We note that in arguing for an exceptional sentence, the State presented a forensic psychological evaluation of Chance to prove his future dangerousness. It is unclear from the record or from counsel's oral arguments before this court whether this was a court-ordered competency evaluation. Chance objected to the evaluation as hearsay. The sentencing court considered the evaluation only "as a factor in the aid of [the State's] argument." Report of Proceedings (Feb. 4, 1999) at 15. The court did not make a finding of future dangerousness or impose an exceptional sentence based on the evaluation.

At oral argument before this court, the State's attorney asserted that the presentence investigation report contained notice of the impending use of the evaluation at sentencing, but the record does not support this assertion. He also indicated that even without that notice, the court could have properly considered the evaluation anyway. We disagree. Under *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), a sentencing court may not consider a court-ordered competency evaluation in determining future dangerousness unless the defendant was warned *prior* to the evaluation that it might be used against him at sentencing. There is no evidence before us that Chance received such notice. However, the court explicitly did not consider the evaluation in its sentencing determination and any error in admitting the evaluation was harmless beyond a reasonable doubt.

### B. Consecutive Sentence

Sentences under RCW 9.94A.400(1)(a) shall be served concurrently. Consecutive sentences may be imposed only under the exceptional sentence provisions of RCW 9.94A-.120 and .390. RCW 9.94A.400(1)(a).

Stalking is a gross misdemeanor under RCW 9A.46.110 unless one of several circumstances exists to make it a class

C felony. If the "victim is or was a[n] . . . attorney" and the stalking was "to retaliate against the victim for an act the victim performed during the course of official duties," then stalking is a class C felony. RCW 9A.46.110(5)(e). The retaliatory nature of Chance's stalking was used to classify his stalking crime as a felony, rather than a misdemeanor.

"[A]n enhanced sentence may not be based on those factors the Legislature necessarily considered in setting the sentence range for the *type* of offense." *State v. Chadderton*, 119 Wn.2d 390, 395, 832 P.2d 481 (1992). While we find that retaliation justifies an exceptional sentence for Chance's assault convictions, it cannot justify imposing a consecutive sentence for the stalking conviction because it was already considered as an element in his felony conviction. *See Chadderton*, 119 Wn.2d at 395.

■ However, we find that the prolonged duration of the stalking and Chance's flagrant disregard for police efforts to prevent it justify the imposition of a consecutive sentence on the stalking charge, under RCW 9.94A.120(2) and RCW 9.94A.400(1)(a). Chance stalked Gilbert for several years despite the best efforts of the courts and police to keep him away from Gilbert. On the day of the final assaults, he knowingly threatened, chased, and attacked Gilbert in the presence of law enforcement officers. These factors were sufficiently aggravating to justify the consecutive sentence for the stalking conviction.

The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports but will be filed for public record as provided in RCW 2.06.040.

ARMSTRONG, C.J., and SEINFELD, J., concur.

Review denied at 144 Wn.2d 1012 (2001).